GLOMAR STEEL CORPORATION T/A EASTERN SUPPLY COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MILTON REID AND GLORIA REID, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Glomar Steel Corp. v. Commissioner
Docket Nos. 9034-76, 9120-76.
United States Tax Court
T.C. Memo 1982-275; 1982 Tax Ct. Memo LEXIS 472; 43 T.C.M. (CCH) 1405; T.C.M. (RIA) 82275; May 18, 1982. *472 Held: Respondent's determinations of defficiencies upheld in view of the absence of any evidence establishing error in the determinations. Held further: Imposition of fraud penalty on petitioner Milton Reid upheld. W. Robert Abramitis, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: In these consolidated cases respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: Sec. 6653(b)
Petitioner
Year Ended
Deficiency
Addition
Glomar Steel Corporation
October 31, 1969
$ 3,482
T/A Eastern Supply Company
October 31, 1970
4,727
Docket No. 9034-76
October 31, 1971
6,040
Milton Reid and Gloria Reid
December 31, 1968
23,127
$ 11,563
Docket No. 9120-76
December 31, 1969
58,305
29,152
December 31, 1970
34,163
17,081
December 31, 1971
2,962
The issues presented for our determination are: (1) Whether petitioner Glomar Steel Corporation overstated its purchases for the years ended October 31, 1969, and October 31, 1970; (2) Whether a harness racing operation conducted by petitioners Milton and Gloria Reid known as Glomar Stables was engaged in for profit; (3) Whether *474 petitioners Milton and Gloria Reid (hereinafter sometimes petitioners) received unreported income from Glomar Steel Corporation T/A Eastern Supply Company; (4) Whether petitioners received additional amounts as dividend income from Glomar Steel Corporation in each of the years in issue; (5) Whether in 1970 petitioners received $ 8,300 in wages from Glomar Steel Corporation which was not reported on petitioners' 1970 return; (6) Whether certain employee business expenses deducted by petitioners in each of the years in issue represented ordinary and necessary business expenses or were expended for their designated purpose; and (7) Whether petitioner Milton Reid is liable for the addition to tax provided by section 6653(b). [1]
FINDINGS OF FACT Pursuant to our order of November 7, 1979, declaring absolute the Court's Order to Show Cause under Rule 91(f) dated October 11, 1979, certain facts have been deemed established for purposes of these consolidated *475 cases. See Rule 91(f)(3). These facts together with the exhibits attached thereto are incorporated herein by this reference. This case was called for trial on November 27, 1979, in Miami, Florida. There was no appearance by or on behalf of any of the petitioners herein nor were any briefs subsequently filed on behalf of petitioners. For the years in issue petitioner Glomar Steel Corporation (hereinafter Glomar) had its principal place of business in Hobboken, New Jersey. The corporation did business during the period in question under the name Eastern Supply Company. The corporate tax return for the year ending October 31, 1968, was filed with the District Director of the Internal Revenue Service, Newark, New Jersey. The returns for the two subsequent years were filed with the Internal Revenue Service Center at Philadelphia, Pennsylvania. Petitioners Milton and Gloria Reid resided in Mayaguez, Puerto Rico, at the time they filed their petition herein. As husband and wife, they filed joint Federal income tax returns for the years in issue. Glomar was a manufacturers' representative selling machinery and equipment. The corporation conducted business with various towns *476 and municipalities. Ninety-eight percent of the outstanding shares of stock of Glomar were owned by Gloria Reid. The president and vice president of the corporation were Gloria Reid and Milton Reid respectively. On June 30, 1967, Milton and Gloria Reid opened an account for Glomar under the name Eastern Supply Company at the First National Bank of Jersey City. On the same day they opened an account at the above-noted bank under the name Eastern Supply and Equipment Company. During the years in issue Milton Reid deposited checks in payment for goods supplied by Glomar and payable to Eastern Supply Company in the account registered under the names of Eastern Supply and Equipment Company. Checks of the Eastern Supply and Equipment Company were then drawn payable to either Mr. Reid, cash, or to a harness racing operation owned by the Reids known as Glomar Stables. For the years in issue these checks totalled as follows: 1968
$ 42,127.00
1969
78,334.79
1970
46,927.00
The checks were usually endorsed by either Mr. Reid, Terri Vidman or V. Wagner. The latter two individuals were Mr. Reid's secretaries during the years in issue. These amounts were not reported *477 on petitioners' returns for the above-noted years. The following analysis represents respondent's computation of the total distributions from Glomar to Milton and Gloria Reid for the years 1967-1970: 1967
1968
1969
1970
Milton Reid, Drawing [2]
$ 9,280.00
$ 10,100.00
$ 18,830.00
$ 7,050.00
Loans and Repayments [2]
16,500.00
29,587.50
9,915.47
8,059.40
Car Payments, Misc. [2]
5,470.63
2,821.89
6,179.89
Disallowed Corporate
Expenses
16,255.43
28,271.67
9,169.59
18,690.03
Total Distributions
42,005.43
73,429.80
40,736.95
39,979.32
Less: Loans and
Repayments
16,500.00
29,587.50
9,915.47
8,059.40
Net Distributions
$ 25,505.43
$ 43,842.30
$ 30,821.48
$ 31,919.92
Salary
9,280.00
9,819.50
19,909.40
18,559.40
Distributions with
Respect to Stock
16,225.43
34,022.80
10,912.08
13,360.52
Salaries from Glomar were reflected on petitioners' 1968 and 1969 returns in the respective amounts of $ 9,819.50 and $ 19,909.40. On their 1970 return petitioners included $ 10,259.40 as other *478 compensation from Glomar while neglecting to include $ 8,300 in wages. Both of these last referenced figures were included on a W-2 form issued by Glomar to Milton and Gloria Reid. As indicated in the foregoing analysis, respondent disallowed certain corporate expenses and recharacterized the expenditures as distributions to shareholders. These amounts represent corporation checks payable to cash and endorsed by the Reids. Many of these checks were allegedly earmarked for corporate purchases, which purpose respondent disputes. Respondent's analysis of the earnings and profits account of Glomar and the effect of corporate distributions on corporate shareholders may be represented as follows: 1967
1968
1969
1970
Taxable Income as Corrected
$ 10,300 $ 14,393 $ 20,633 Less: Federal Income Tax
(3,483)
(4,992)
Earnings before Distributions
10,330 10,911 15,641 Distribution with Respect
to Stock
$ 16,225 34,023 10,912 13,360 Reduction of Earnings
(Sec. 301(c) (1) -
Dividends)
(10,330)
(10,911)
(13,360)
Reduction of Capital Stock
(Sec. 301(c) (2) -
Return of capital)
(16,255)
(2,445)
Capital Stock -- Ending
Balance
2,445 Capital Gain - Section
301(c) (3)
21,248 *479 Numerous expenditures of Glomar which were deducted were recharacterized as distributions to the Reids. Glomar Stables was a harness racing operation, owned and controlled by Milton and Gloria Reid. The Reids reported the following losses from Glomar Stables on their returns for the years in issue: 1968
$ 14,652.00
1969
12,169.00
1970
7,911.00
1971
3,635.00
In his notice of deficiency dated July 22, 1976, respondent disallowed all of the above losses on the basis that the harness racing operation was not engaged in for profit. Using the same rationale respondent disallowed ordinary losses of $ 2,372 in 1969 and $ 4,208 in 1969. These losses were allegedly attributable to sales of horses by Milton and Gloria Reid. Respondent also determined in the notice of deficiency that petitioners received unreported income from Eastern Supply and Equipment Company (which was diverted from Eastern Supply Company) in the following amounts: 1968
$ 42,127.00
1969
78,335.00
1970
46,927.00
Respondent further asserted in his notice of deficiency that Milton and Gloria Reid received dividends from Glomar in the following amounts: 1968
$ 10,330
1969
10,911
1970
13,360
*480 Respondent made other adjustments to the returns of Milton and Gloria Reid as follows: 1. Respondent increased the amount of wages received by petitioners from Glomar during 1970 by $ 8,300. 2. Respondent disallowed employee business expenses as indicated below for failure to establish that the expenses were ordinary and necessary business expenses: 1968
$ 3,761
1969
1,708
1971
3,220
Pursuant to section 6653(b) respondent has determined that petitioner Milton Reid is liable for an additional 50 percent of the underpayment for the years 1969, 1969 and 1970 as part of the underpayment is allegedly due to fraud. With respect to petitioner Glomar Steel Corporation, respondent determined that purchases, as claimed on returns for the periods ended October 31, 1969, and October 31, 1970, were overstated as follows: Per Return
As Adjusted by Respodent
10/31/69
$ 154,071.12
$ 140,696.12
10/31/70
218,134.15
180,660.15
OPINION At the trial of this case in Miami, Florida, on November 27, 1979, there was no appearance either on behalf of petitioners Milton and Gloria Reid or petitioner Glomar Steel Corporation. Nor have petitioners *481 filed any briefs subsequent to trial. None of the facts deemed established for the purpose of this proceeding establishes that respondent's determination was, in whole or in part, erroneous. In view of the lack of evidence to show error in respondent's determinations, the presumption of correctness attaching to the determinations remains unattacked. Accordingly, the basic deficiencies, as determined by respondent, are upheld. Rule 142(a); see . Respondent also determined that petitioner Milton Reid is liable for additions to tax for civil fraud pursuant to section 6653(b) [3] respecting the 1968, 1969 and 1970 tax years. The respondent bears the burden of proving, by clear and convincing evidence, that any part of the underpayment for each of the years was due to fraud. Section 7454(a); Rule 142(b); . The intent required for the imposition of the fraud penalty encompasses a specific purpose to evade a tax believed to be owing. , affd. . Although fraud is never *482 to be imputed or presumed, , circumstantial evidence and reasonable inferences are permissible bases upon which fraud may be found. ; ; . We hold that respondent has adequately borne his burden of proof on the fraud issue for each of the years in issue. This holding is grounded on the factual matter which was deemed established by virtue of our order under *483 Rule 91(f)(3). See . These facts show that on June 30, 1967, petitioners Milton and Gloria Reid opened an account for Glomar under the name Eastern Supply Company at the First National Bank of Jersey City. On the same day petitioners opened an account in the same bank under the slightly different name Eastern Supply and Equipment Company. During each of the years 1968-1970 checks payable to Eastern Supply for goods supplied by Glomar were deposited in the account registered in the name of Eastern Supply and Equipment. Checks of Eastern Supply and Equipment were then drawn payable to either Mr. Reid, cash or to a harness racing operation owned and operated by the Reids. The amounts so withdrawn by the Reids from the account of Eastern Supply and Equipment did not appear on their returns. We believe these circumstances spell out a clear and convincing case of petitioner's diversion of corporate funds from Eastern Supply for his own use without including the amounts in income for Federal tax purposes. While an exclusion from income of small amounts of funds diverted from a corporate entity might support the notion that *484 administrative errors were made, we believe that the consistent and substantial understatements of income involved herein (over $ 167,000 of understated income during the 3-year period 1968-1970) are strong evidence of an intent to evade a tax believed to be owing. See ; ; . Accordingly, we uphold respondent's determination on the addition to tax pursuant to section 6653(b). To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise provided, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The above-noted items with their corresponding amounts were reflected on the books and records of the Glomar Steel Corporation.↩
3. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.↩